UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RITA E. WOJTKOWSKI,

        Plaintiff,

   -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

        Defendant.



18-CV-0511-MJR
DECISION AND ORDER



As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018, Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). (Dkt. No. 18)

Plaintiff Rita E. Wojtkowski ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## **BACKGROUND**

Plaintiff applied for DIB on July 21, 2014, alleging disability beginning February 3, 2014, due to mitochondrial myopathy, neurological disease, adrenal failure/insufficiency, pituitary lesion, MTHFR gene mutation, Raynaud syndrome, osteoarthritis, asthma, cold

---

[1] The Clerk of Court is directed to amend the caption accordingly.

urticaria, and depression/anxiety. (*See* Tr. 11, 393-97, 422)[2] Plaintiff's claim was denied at the initial level, and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 340, 367-68) A video hearing was held before ALJ John Noel, during which plaintiff and a vocational expert testified. (Tr. 304-339) On March 29, 2017, ALJ Noel found plaintiff not disabled, and on March 5, 2018, the Appeals Council denied plaintiff's request for review. (Tr. 1-4, 11-24) The ALJ's determination therefore became the final decision of the Commissioner, and this timely action followed. (Dkt. No. 1)

Plaintiff now moves for judgment on the pleadings on the following grounds: (1) the ALJ erred in rejecting the treating physician's opinion in favor of a stale consulting opinion; (2) the ALJ did not properly apply the treating physician rule; and (3) the mental RFC finding was flawed because it too, relied upon a stale opinion. (Dkt. No. 9-1 [Pl. Mem.] at 1, 13-19) The Commissioner cross-moves for the same relief, arguing that the ALJ properly considered the medical opinion in assessing plaintiff's RFC, which was supported by substantial evidence. (Dkt. No. 16-1 [Def. Mem.] at 1, 15-25) For the following reasons, plaintiff's motion (Dkt. No. 9) is denied and defendant's motion (Dkt. No. 12) is granted.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the]

---

[2] References to "Tr." are to the administrative record in this case. (Dkt. No. 6)

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    _Standards for Determining "Disability" Under the Act_

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  _Id._ §423(d)(2)(A).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience."  _Dumas v. Schweiker_, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (_quoting Miles v. Harris_, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity."  _Id._ §404.1520(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience."  _Id._  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has

a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work,

then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.     *The ALJ's Decision*

In applying the five-step sequential evaluation process, the ALJ found at step one that plaintiff did not engage in substantial gainful activity since February 3, 2014. (Tr. 13) At step two, the ALJ found that plaintiff had severe impairments consisting of antiphospholipid antibody syndrome with mitochondrial dysfunction; degenerative joint disease of the bilateral knees; asthma; COPD; and anxiety disorder. (Tr. 15) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 14) Before proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(b) except she can have no exposure to extreme cold; no exposure to extreme heat; only occasional exposure to wetness and humidity; and only occasional exposure to odors, dusts, fumes, and other pulmonary irritants; can perform simple routine tasks; use judgment limited to simple, work related decisions; and deal with routine changes in the work environment.

(Tr. 17)

At step four, the ALJ found that plaintiff could not perform her past relevant work as a benefits clerk, but could perform other work existing in significant numbers in the national economy such as cashier, fast food worker, and office helper. (Tr. 22-23) Accordingly, the ALJ found plaintiff not disabled. (Tr. 23-24)

IV.   *Plaintiff's Challenges*

Plaintiff argues that the ALJ improperly evaluated the opinion evidence because the opinions he relied upon were stale, and therefore could not constitute substantial evidence to support the RFC, and because he improperly applied the treating physician rule. (Dkt. No. 9-1 at 13-19)

A.   Stale Opinion Evidence

It is well-settled that an "ALJ should not rely on 'stale' opinions—that is, opinions rendered before some significant development in the claimant's medical history." *Robinson v. Berryhill*, No. 17-CV-0362, 2018 WL 4442267, at *4 (W.D.N.Y. Sept. 17, 2018) (citing *Jones v. Colvin*, No. 14-CV-6316, 2015 WL 4628972, at *4 (W.D.N.Y. Aug. 3, 2015)).   Medical source opinions that are "conclusory, stale, and based on an incomplete medical record" may not be substantial evidence to support an ALJ's RFC finding. *Griffith v. Astrue*, No. 08-CV-6004, 2009 WL 909630, at *9 n.9 (W.D.N.Y. July 27, 2009).   "The mere passage of time does not render an opinion stale.   Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Whitehurst v. Berryhill*, No. 16-CV-1005, 2018 WL 3868721, *4 (W.D.N.Y. Aug. 14, 2018).

In evaluating the opinion evidence, the ALJ discussed the opinion of Dr. Donna Miller, D.O., who performed a consultative physical examination of plaintiff on September

25, 2014. (Tr. 742-48) Plaintiff's physical examination findings were generally unremarkable except for some reduced range of motion. (Tr. 744) A pulmonary function test revealed "severe obstruction with significant improvement post med[ication] to moderate." (Tr. 745) Dr. Miller assessed no exertional limitations, but opined that plaintiff should avoid environmental irritants, such as dust, tobacco, and extreme cold weather. (Tr. 745)

The ALJ afforded Dr. Miller's opinion great weight because her opinion was consistent with her own examination findings, plaintiff's other normal examination findings, and the record as a whole, which he discussed in detail. (Tr. 18-20) He further noted that Dr. Miller was an acceptable medical source familiar with the agency's disability protocols and had been able to evaluate plaintiff personally. (Tr. 20) Finally, he cited treatment records from July, 2015, and January, 2016, that demonstrated that plaintiff's condition improved with medication and that she reported doing well. (Tr. 20, 766, 768)

Indeed, the medical evidence from the relevant period does not show that plaintiff's condition worsened since the date of Dr. Miller's opinion. For example, in July of 2015, plaintiff reported to her immunologist, Dr. Julian Ambrus, that her overall energy was significantly better, her sinuses were under very good control, and she "fel[t] the best she ha[d] in over 4 years, she did not want to change anything . . . ." (Tr. 766) Dr. Ambrus' notes from October, 2016, state that plaintiff was "doing very well" with her overall energy, had no recent problems with cold-induced urticaria, and except for her allergies, plaintiff felt as though she was doing "pretty well." (Tr. 952) Additional records from 2015 and 2016 show that her asthma had improved with treatment, and she had no further issues with joint pain. (Tr. 763, 768) On January 12, 2017, plaintiff presented at Cleveland Hill

Medical Group with sinus complaints. (Tr. 959) Her physical examination was unremarkable. Plaintiff was assessed with an acute upper respiratory infection, and was advised to quit smoking. (Tr. 959-60) During that visit she reported that she was working for herself "doing hairdressing at home" and selling supplements. (Tr. 961)

The examination findings from her treating sources and plaintiff's own reports of her condition improving is consistent with the limitations assessed by Dr. Miller. The Court therefore rejects plaintiff's contention that Dr. Miller's opinion was stale. *See, e.g., Wilson v. Berryhill*, No. 16-CV-0664, 2018 WL 4211322, at *7 (W.D.N.Y. Sept. 4, 2018) (plaintiff's staleness argument was without merit where later examinations showed improvement); *Habschied v. Berryhill*, No. 17-CV-6217, 2019 WL 1366040, at *9 (W.D.N.Y. Mar. 26, 2019) (opinions were not stale where subsequent records showed improvement).

The same is true for plaintiff's challenge to the ALJ's treatment of the opinion of Susan Santarpia, Ph.D., who performed a mental consultative examination of plaintiff in September of 2014. (Tr. 737-740) Plaintiff's mental status examination was unremarkable, she was able to perform daily activities, could manage funds, and took no psychotropic medication. (Tr. 738-39) Dr. Santarpia opined that plaintiff would have a mild to moderate impairment in performing complex tasks, but could understand and remember simple directions and instructions, perform simple tasks, relate with others, and maintain attention, concentration, and a schedule. (Tr. 739) Plaintiff's difficulties were stress-related. (Tr. 739-40)

The ALJ afforded Dr. Santarpia's opinion great weight because her opinion was consistent with her own exam findings, the mental status exam findings of plaintiff's other

sources, and her daily activities. (Tr. 21) The ALJ also noted that Dr. Santarpia, like Dr. Miller, was an acceptable medical source familiar with the agency's disability protocols who had conducted her own personal examination of plaintiff. (Tr. 21) The ALJ, therefore, afforded her opinion great weight and found that Plaintiff could perform the range of unskilled work stated above. (Tr. 17, 21)

Again, plaintiff relies exclusively on the age of the opinion (two years prior to the ALJ's decision) in support of her argument. (Dkt. No. 9-1 at 18) While it is true that plaintiff continued to treat for her anxiety with Dr. Ann Rouselle through November of 2016, the medical records from 2015 onward consistently demonstrated normal examination findings, save for some anxious mood and agitation, and Global Assessment of Functioning ("GAF") scores of 65-67 indicating mild symptoms.[3] (Tr. 21, 987-1005) Although plaintiff continued to exhibit symptoms of anxiety, there is no evidence that her condition worsened following Dr. Santarpia's evaluation. (Tr. 21, 963-1029)

In addition, plaintiff maintained a robust level of daily activities, as noted by the ALJ, including driving, shopping, and managing her finances. Shortly after the administrative hearing in January of 2017, plaintiff reported working from home hairdressing and selling supplements. (Tr. 21, 321, 439, 737, 739, 743, 961) This evidence does not indicate a deterioration of plaintiff's mental condition so as to render Dr. Santarpia's opinion stale. The Court rejects plaintiff's request for remand on this basis, and next addresses her argument that the ALJ misapplied the treating physician

---

[3] "GAF is a scale that indicates the clinician's overall opinion of an individual's psychological, social, and occupational functioning . . . . The GAF scale ranges from 0 to 100; GAF scores from 61–70 indicate some mild symptoms or some difficulty in social, occupational, or school situations, but general functioning and the existence of some meaningful personal relationships." *Petrie v. Astrue*, 412 Fed. Appx. 401, 406 (2d Cir. 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 376–77 (4th ed., text revision, 2000)).

rule with respect to the opinion of neurologist Robert Wilson, D.O. (Dkt. No. 9-1 at 15-19)

### B. Treating Physician Rule

Under the pertinent regulations in place at the time of plaintiff's application, the treating physician rule "generally requires deference to the medical opinions of a [plaintiff's] treating physician[.]". *Hallorn v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §404.1527(c)(2) (The opinion of a treating physician is to be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]"). To that end, the Commissioner is required to "always give good reasons" for the weight given to a treating source opinion. *Halloran*, 362 F.3d at 32 (quoting 20 C.F.R. §404.1527(c)(2)). The reasons must be specific and supported by evidence in the record. *Marth v. Colvin*, No. 15-cv-0643, 2016 WL 3514126, *6 (W.D.N.Y. June 28, 2016).

When controlling weight is not given to the opinion of a treating physician, the ALJ must consider the following factors to determine how much weight to give the opinion of a treating source: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in a claimant's particular case. 20 C.F.R. §§ 404.1527(c), 416.927(c).

By letter dated May 31, 2016, Dr. Wilson opined that plaintiff "has mitochondrial disease and is permanent disability [sic] full time or part time in physical and sedentary

capacity indefinitely.  This condition does not remit and is actually progressive.  Returning to work is not a realist[ic] option . . . ."  (Tr. 41)

The ALJ afforded Dr. Wilson's opinion very little weight.  (Tr. 20)  He noted that, although Dr. Wilson was a treating acceptable medical source, his opinion was inconsistent with the record, including medical evidence showing generally normal physical examination findings, well-controlled respiratory and cold urticarial symptoms, and plaintiff's own testimony regarding her daily activities and ability to lift up to 20 pounds.  (Tr. 20-21)  The ALJ also noted that Dr. Wilson's opinion was not a functional assessment of Plaintiff's abilities, but an assessment of disability which is a determination reserved to the Commissioner.  (*Id.*)

Here, the ALJ correctly observed that Dr. Wilson's opinion spoke to the ultimate issue of disability and was entitled to no special weight.  *See Mix v. Astrue*, No. 09-CV-0016, 2010 WL 2545775, at *7, (W.D.N.Y. June 18, 2010) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)); *see also* 20 C.F.R. § 404.1527(d) (2016) (a statement that a claimant is "disabled" or "unable to work" is not afforded any significance by the Commissioner).  He also noted that the opinion lacked specificity in plaintiff's ability to perform work-related functions.  *See Valdez v. Colvin*, 232 F. Supp. 3d 543, 553-54 (S.D.N.Y. Feb. 3, 2017) (no violation of the treating physician rule where the ALJ rejected a treating physician's letter to plaintiff's employer that she was "unable to work" because it was conclusory and did not set forth any specific restrictions); *Ingraham v. Colvin*, 13-cv-559, 2014 WL 3036243 at *2-*5 (N.D.N.Y. July 3, 2014) (no error in assigning "little weight" to plaintiff's primary care doctor's "work excuses" letters "because they were not functional assessments" and opining that plaintiff was unable to work was "reserved to

the Commissioner"); *see generally* 20 C.F.R. § 404.1527(c)(3) (2016) ("[t]he better an explanation a source provides for an opinion, the more weight we will give to that opinion").

The ALJ further discounted Dr. Wilson's opinion because it was inconsistent with the record, which showed generally unremarkable clinical findings and that plaintiff's respiratory symptoms and cold urticaria were well-controlled. *See Matta v. Astrue*, 508 Fed. Appx. 53, 57 (2d Cir. 2013) (acknowledging that the ALJ can discount the opinion of a treating physician when it is inconsistent with other parts of the record); 20 C.F.R. § 404.1527(c)(2) (2016) (only if a treating physician's opinion is well supported by the objective medical evidence and "not inconsistent with the other substantial evidence in the case record," can it be afforded controlling weight).

Finally, the ALJ observed that, "[i]nconsistent with Dr. Wilson's opinion, claimant testified that she was sometimes able to lift 20 pounds, could vacuum, dust, and perform some yard work." (Tr. 21) Therefore, the ALJ also properly discounted Dr. Wilson's opinion as inconsistent with Plaintiff daily activities. *See Williams v. Colvin*, No. 14-CV-947S, 2017 WL 3404759, at *6 (W.D.N.Y. Aug. 9, 2017) ("an ALJ may consider Plaintiff's daily activities, symptoms, and objective medical evidence together to determine whether a treating physician is credible.").

In sum, the ALJ's reasoning and adherence to the regulation are clear from the face of decision, and the ALJ properly considered Dr. Wilson's opinion.

For all of the foregoing reasons, the ALJ's decision was supported by substantial evidence and free of legal error.

## **CONCLUSION**

Accordingly, plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is denied

and the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is granted.

The Clerk of Court shall take all steps necessary to close this case.


**SO ORDERED.**


Dated:     August 26, 2019
           Buffalo, New York

                                        _____
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge